IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERWIN D. STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 14-1287-SLR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

Erwin D. Stevens, Wilmington, Delaware. Pro Se Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney for the District of Delaware and Heather Benderson, Esquire, Special Assistant United States Attorney of the Social Security Administration, Philadelphia, Pennsylvania. Counsel for Defendant. Of Counsel: Nora Koch, Esquire, Acting Regional Chief Counsel, Region III, of the Social Security Administration, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated: January 12, 2017
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Erwin D. Stevens ("plaintiff"), who proceeds pro se and has been granted leave to proceed in forma pauperis, seeks judicial review of a decision of the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 405(g). Presently before the court are the parties' cross-motions for summary judgment.

## II. BACKGROUND

### A. Procedural History

Plaintiff seeks review of a final decision by defendant denying his request for waiver of overpayment recovery. (D.1. 2) Plaintiff began receiving disability insurance benefits upon a finding of disability as of June 25, 1999. (D.I. 16 at 14, D.I. 16-2 at 39) Plaintiff returned to work in October 2005. (D.I. 16-2 at 26) On June 2, 2008, plaintiff was advised by SSA that he had received an overpayment of benefits in the amount of $26,930. (D.I. 16-1 at 46-51) On May 14, 2010, he received a second notice of overpayment and, on September 13, 2010, he submitted a request for waiver of the overpayment. (D.I. 16-2 at 5-13) On September 24, 2011, the SSA denied plaintiff's requests[1] to waive collection of overpayment (that had increased to $39,051.60). (D.I. 16-2 at 14-15, 18-20, D.I. 16-3 at 10-14) Plaintiff sought a hearing before the administrative law judge ("ALJ"), which hearing was held on June 18, 2013. (D.I. 16-2 at 30, D.I. 16-3 at 32) On July 26, 2013, the ALJ issued an unfavorable decision denying the request for waiver of overpayment. (D.I. 16 at 17-20) Plaintiff sought review by the Appeals Council, which issued a decision on August 12, 2014 agreeing

---

[1] Plaintiff's initial request and request for reconsideration.

with the ALJ's determination. (*Id.* at D.I. 16 at 9-13; D.I. 16-4 at 17-20) Plaintiff commenced this action on October 9, 2014.

### B. Benefits History

When plaintiff applied for disability benefits on October 26, 1999, he agreed to "notify the Social Security Administrative of all events as explained to me," including that if his "medical condition improve[d] so that I would be able to work, even though I have not yet returned to work," or if he went "to work whether as an employee or a self-employed person." (D.I. 16-1 at 29) In the application, plaintiff acknowledged that "[t]he above events may affect my eligibility to disability benefits as provided in the Social Security Act, as amended," and acknowledged that his "reporting responsibilities have been explained to me." (*Id.* at 29-30)

On May 9, 2008, the SSA sent plaintiff a notice of a proposed decision that it had information plaintiff had been performing substantial work since January 2006 based on SSA's earnings records and employer work reports. (D.I. 16-2 at 26-29) Plaintiff was informed that, based on this information, his "disability ended because of substantial work October 2005," and that he was not entitled to payments for January 2006 through December 2007. (*Id.* at 26) The notice went on to explain that "[g]oing to work does not affect payments right away," because "a person is allowed a period of 9 trial work months to test his or her ability to work in spite of health problems." (*Id.* at 27) Plaintiff's nine-month trial work period ran from January 2005 through September 2005. (*Id.* at 27-28) Plaintiff was advised that his disability ends if, at the end of the trial work period, his work activity showed an ability to do substantial work. (*Id.* at 28) The SSA informed plaintiff that he could be paid for October 2005 through December 2005

2

Case 1:14-cv-01287-SLR Document 21 Filed 01/12/17 Page 4 of 13 PageID #: 357

because an individual is entitled to benefits for the "month disability ends [after the trial work period] and the following 2 months no matter how much is earned." (*Id.*) It further informed plaintiff that he would receive an extended 36 month period of eligibility that commences after the trial work period, and that it would restart payments for any month(s) that plaintiff's work was "not substantial" if his health problems still met its rules. (*Id.*) Plaintiff's benefits were suspended retroactively from January 2006 through December 2007. (D.I. 16-2 at 43, 45, 46)

On June 2, 2008, plaintiff was notified that his benefits were continued, effective January 2008, because the SSA determined that he was no longer doing substantial work. (D.I. 16-2 at 46-51) Plaintiff was also informed that he was overpaid $26,930 for disability payments for January 2006 through December 2007 because of substantial work. (D.I. 16-2 at 46-47) The notice reminded plaintiff that "he must tell us right away about any changes that may affect your benefits. If you do not, you may have to repay any benefits you are not due." (*Id.* at 48) The notice advised plaintiff to report if "[y]ou went to work since your last report or you return to work in the future" or "[y]ou already reported your work, but your duties or pay have changed." (*Id.*) The SSA explained to plaintiff that if he did not repay the overpayment within 30 days, it would recover the overpayment from the benefit plaintiff was due on September 3, 2008. (*Id.* at 47)

The SSA withheld plaintiff's benefits payments from August 2008 through March 2010 to recover the $26,930 overpayment.[2] (D.I. 16-3 at 13) When the SSA determined that plaintiff performed substantial work during this time and that, through

---

[2] What this means is that plaintiff did not receive money "in his pocket." (D.I. 16-4 at 55)

3

May 2010, he was overpaid $39,051.60, it sent plaintiff a notice on May 14, 2010 of a proposed decision and informed him that it had information he had been performing significant work since January 2006. (D.I. 16-1 at 52, D.I. 16-2 at 1-3, D.I. 16-3 at 15-18) Plaintiff was advised that the information was based on plaintiff's signed statement regarding his work activity, the agency's earnings records, and employer work reports. (D.I. 16-1 at 52) Plaintiff was advised that his "disability ended because of substantial work October 2005," and he was not entitled to payments for January 2006 through the month of the notice. (*Id.*)

Plaintiff submitted a request for waiver of the overpayment and stated that he did not believe he was at fault in causing the overpayment or accepting the money. (D.I. 16-2 at 5) The request explained that plaintiff called the SSA when he started working and was told that he would receive benefits for "nine months but it continued past that time." (*Id.* at 6) During the June 18, 2013 administrative hearing, plaintiff provided similar testimony that, in 2005, he called the SSA when he went back to work, he was told he had a nine-month trial work period in which he could receive benefits, and that his benefits were "going to end in nine months." (*Id.* at D.I. 16-4 at 42-43) Plaintiff testified that he called the SSA after the trial work period and told it that he "didn't need this" and was told he would "get no more after this." (*Id.* at 43) When the benefits continued, plaintiff called the agency a "couple times afterwards." (*Id.*) Plaintiff knew the benefits were supposed to stop after nine months, and testified that he "told them several different times," but he was "glad in a way they continued it . . . ." (*Id.*)

Plaintiff testified that he became confused when he received a letter that his benefits were being reinstated. (*Id.* at 48, 49) He called the SSA and told them that he

4

was working and did need not the money. (*Id.* at 48) When plaintiff did not receive benefits for about two and half years, he believed that the SSA "got the hint," but later learned that it had paid itself back. (*Id.*) He did not understand what the SSA was doing. (*Id.* at 49)

### III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of "evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50( a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If "reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Id.* at 250-51 (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (*e.g.*, that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d

6

968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without a remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. Decisions of the ALJ and the Appeals Council

The ALJ found that: (1) plaintiff was overpaid benefits in the amount of $39,051.60 during the period January 1, 2006 to May 1, 2010; (2) he was at fault in causing the overpayment because he knew the benefits should stop after nine months of work, but continued to accept the incorrect payment; and (3) recovery of the overpayment is not waived and plaintiff is liable for repayment. (D.I. 16 at 19-20)

The Appeals Council agreed with the ALJ's determination that plaintiff was not without fault in causing the overpayment, but noted that the ALJ did not account for plaintiff's intellectual disabilities. (D.I. 16 at 10) Accordingly, the Appeals Council reviewed plaintiff's medical record, and specifically his mental residual functional capacity assessment, to determine if plaintiff was without fault. (*Id.*) The Appeals Council relied upon the assessment that plaintiff was able to understand, remember, and carry out detailed tasks on a regular basis with only occasional difficulty in maintaining concentration, persistence, or pace. (D.I. 16-4 at 21-33) It also looked to plaintiff's hearing testimony that he understood the rules regarding the trial work period, that he called the SSA to report that he had returned to work and was told he was entitled to a nine-month trial work period, that he called the SSA when the nine-month trial had ended and was told he would no longer receive disability checks, and he admitted that when he continued to receive disability checks, he accepted and cashed

them. (*Id.*) After considering plaintiff's intellectual challenges, the Appeals Council determined that plaintiff understood the program rules and continued to accept disability checks to which he knew or should have known he was not entitled; therefore, he was not without fault. (*Id.*) The Appeals Council found that: (1) plaintiff was overpaid $39,051.60 in disability benefits from January 2006 through May 2010; (2) despite plaintiff's intellectual challenges, he understood the program rules and accepted payments to which he knew or should have known he was not entitled; (3) and he was not without fault in causing the overpayment in question.

## V. DISCUSSION

Plaintiff takes exception to the ALJ's decision to deny a waiver of overpayment recovery because: (1) when he received the SSA letters he did everything they said; (2) he advised the SSA on numerous occasions that he was working; (3) when the SSA determined that it wanted repayment, it restarted his benefits and, instead of giving the money to him, kept the money to repay the overpayment; and (4) the SSA records contain errors. (D.I. 10, D.I. 18) Defendant argues that substantial evidence supports the final decision that plaintiff was not entitled to a waiver of the overpayment. (D.I. 20)

### A. Applicable Statute and Law

The Social Security Act ("Act") requires the Commissioner to correctively adjust or recover overpayments to individuals in accordance with the administrative process set out in SSA regulations.[3] *See* 42 U.S.C. § 404(a)(1). The Act stipulates that certain

---

[3]If the SSA determines that an individual has erroneously received more benefits than he or she is due, it must first notify the individual of the overpayment and of his or her right to request a waiver. *See* 20 C.F.R. §§ 404.502a, 416.55 8(a). The individual may then submit a request for a waiver of overpayment recovery. *Id.* at § 404.506. If

overpaid individuals may qualify for a waiver of overpayment recovery, which absolves them from having to refund overpaid benefits. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506.

A waiver of overpayment recovery can only be approved if: (1) the overpaid individual is without fault; and (2) adjustment or recovery of the overpayment would either (a) defeat the purpose of Title II of the Act, or (b) be against equity and good conscience. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. The individual seeking waiver bears the burden of proving that these conditions have been met. *See Lang v. Sullivan*, 762 F. Supp. 628, 631-32 (D.N.J. 1991) (citing *Valente v. Secretary of Health & Human Services*, 733 F.2d 1037, 1042-43 (2d Cir. 1984)), *aff'd sub nom, Lang v. Dep't of Health & Human Services*, 947 F.2d 936 (3d Cir. 1991) (table).

### B. Fault

SSA guidelines provide that:

> whether an individual is at fault . . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (b) Failure to furnish information which he knew or should have known to be material; or

---

the request cannot be approved after initial review, the individual is given an opportunity to have a personal conference with a claims representative and review the claims file. *Id.* at § 404.506(c)-(t). Next, the SSA issues a written decision approving or denying the waiver request, and notifies the individual of his or her right to appeal. *Id.* at § 404.506(g). If the waiver is denied, the individual may request a hearing before an ALJ. *Id.* at § 404.930(a)(6). When the ALJ issues an adverse decision, the individual may request review by the Appeals Council. *Id.* at § 404.968. The Appeals Council may deny the individual's request for review and is under no obligation to address the individual's contentions or explain the rationale for its decision. *Id.* at § 404.967; *see also Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

9

> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The degree to which SSA may have been concurrently at fault has no bearing on an overpaid individual's liability to repay. Even though the SSA may have been at fault in making an overpayment, that fact does not relieve the overpaid individual from liability for repayment if the individual is not without fault. *Id.*; *see also Mehalshick v. Comm'r Soc. Sec.*, 609 F. App'x 710, 712 (3d Cir. 2015) (unpublished).

Plaintiff appears to contend that he was not at fault in causing the overpayment because he repeatedly notified SSA of his resumed employment and because his benefits were reinstated in a confusing manner. Plaintiff bears the burden of proving the ALJ's finding that he was at fault is not supported by substantial evidence. *See Lang*, 762 F. Supp. at 631-32. The court finds that plaintiff has not satisfied his burden.

The ALJ found that plaintiff was at fault because he: (1) knew that benefits should stop after nine months of work, but he continued to accept the incorrect payments; (2) did not return the benefits; and (3) did not provide employment information after the trial work period. Such findings are supported by substantial evidence. Plaintiff's position that the SSA was at fault due to misinformation is immaterial to the pertinent question for determining waiver eligibility: that is, whether the claimant, plaintiff, was "without fault." *See* 20 C.F.R. § 404.507.

In addition, as is statutorily required, the Appeals Council specifically took into account plaintiff's intellectual challenges. *See* 42 U.S.C. § 404(b)(2) (in making a determination whether any individual is without fault, the Commissioner shall specifically take into account any physical, mental, educational, or linguistic limitation such

10

individual may have). The Appeals Council found that plaintiff was at fault because the evidence showed that, in spite of his intellectual challenges, plaintiff understood the program rules and accepted payments even though he knew (or should have known) he was not entitled to them. Substantial evidence supports this finding.

Plaintiff acknowledged that he knew the payments were a mistake and he was not supposed to receive them. In addition, when plaintiff applied for disability benefits, he acknowledged his obligation to report his work activity for purposes of adjusting or stopping benefits. The evidence examined by the ALJ is that plaintiff received benefits to assist him while his disability prevented him from working, that he was aware of his obligation to report his return to work, and that he was aware the payments were a mistake and that he was not supposed to receive them. Finally, the evidence examined by the Appeals Council included that before the ALJ, as well as a mental assessment, that supports the finding that plaintiff is not without fault in causing the overpayment. This evidence suffices for reasonable minds to conclude that plaintiff should have realized that he was not entitled to keep the benefits after he resumed full-time work. The court further finds reasonable the ALJ's recommendation that a monthly payment schedule be arranged that is affordable to plaintiff, taking into consideration his lack of resources.

The court finds the conclusion that plaintiff was "not without fault" is supported by the substantial evidence of record. Therefore, the court will grant defendant's motion for summary judgment and will deny plaintiff's motion for summary judgment.

### C. Purpose of Title II and Equitable Considerations

Because the finding that plaintiff was at fault is supported by substantial evidence, the court need not address the issue of whether recovery of the overpayment would defeat the purpose of Title II or be against equity and good conscience. *See* 42 U.S.C. § 404(b); *Mehalshick*, 609 F. App'x at 713 n.3 (citing *Garnett v. Sullivan*, 905 F.2d 778, 782 (4th Cir. 1990)).

### VI. CONCLUSION

For the reasons discussed above, the court will deny plaintiff's letter/motion for summary judgment (D.I. 18) and will grant defendant's motion for summary judgment. (D.I. 19)

An appropriate order will be entered.